## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KAHLIG ENTERPRISES, INC., | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-20-CV-01091-XR |
| | § | |
| AFFILIATED FM INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

On this date, the Court considered Defendant's motion for summary judgment (ECF No. 53), Plaintiff's response (ECF No. 58), and Defendant's reply (ECF No. 60). After careful consideration, the Court issues the following order.

## BACKGROUND[1]

This case arises out of a dispute between Plaintiff Kahlig Enterprises, Inc. ("Kahlig") and Defendant Affiliated FM Insurance Company ("AFM"). Plaintiff is a Texas corporation and the named insured for the commercial real properties located at 20985-21519 West Interstate 10, San Antonio, Texas 78257. Defendant AFM is a foreign fire and casualty insurance company.

On or about April 13, 2019, a major hail and windstorm caused substantial damage to Plaintiff's properties. ECF No. 49 at 2. These insured properties included automobile dealership buildings consisting of a Lexus dealership, a Subaru dealership, a Volkswagen dealership, and one make ready car wash building. *Id*. Plaintiff provided written notice of the loss to Defendant AFM on April 15, 2019. *Id*. Defendant AFM assigned the claim to adjuster Grace Bonilla ("Bonilla")

---

[1] These facts are undisputed unless otherwise noted.

1

and AFM and Bonilla then retained Gary Roos ("Roos") of York Risk Services to inspect the properties. *Id*. On April 23, 2019, Roos inspected the properties. *Id*. On April 25, 2019, Roos reported back to AFM and Bonilla that all of Plaintiff's properties had sustained damage from the storm. *Id*.

Plaintiff retained the services of public insurance adjuster Gary Pennington ("Pennington") of Blackstone Claims Services ("Blackstone") to assist with its claim. *Id*. On April 25, 2019, "Blackstone cut and removed test samples from the TPO and PVC roofing membranes to permit examination of the backside of the membrane and underlying substrate." *Id*. at 2–3. These samples were then examined by Plaintiff's consultant, Gary Treider, of Chaparral Consulting and Forensics and APEC Engineering. The samples indicated that there was damage to the paper facer between the TPO member and the insulation. *Id*.

In May of 2019, various representatives from both parties met at the properties to discuss the claim. ECF No. 53-13 at 2. Thereafter, on June 7, 2019, Plaintiff alleges that Bonilla sent Plaintiff and Blackstone a letter accepting coverage for the claim on Defendant's behalf. *Id*. Defendant contends that this letter served to notify Plaintiff of potential coverage and that the scope and amount of the claim remained under investigation. Defendant did not issue payment at that time. On October 3, 2019, Blackstone provided a signed sworn proof of loss with supporting documentation of the amount claimed to Bonilla and AFM. ECF No. 51 at 4.

In a letter dated December 18, 2019, Defendant detailed the amount of loss as totaling $885,936.59 on a replacement cost basis and $856,547.54 on an actual cash value basis. ECF No. 53-8 at 2–4. After applying the $100,000 deductible, AFM issued payment of $756,547.54 to Plaintiff, which was received on December 23, 2019. *Id*. Plaintiff alleges that Defendant's estimate and payment were insufficient to repair the damage caused to the properties. ECF No. 49 at 3.

On January 10, 2020, Plaintiff demanded appraisal; Defendant refused to participate in the appraisal process, believing that appraisal was premature. Six months later, on June 1, 2020, Plaintiff's counsel sent a pre-suit demand letter to Defendant's counsel, seeking an additional payment of $1,631,444.78 for the amount to repair the claimed storm damages, plus ten percent per annum interest pursuant to Section 542.060 of the Texas Insurance Code. ECF No. 53-9 at 2–5 (Pre-Suit Notice Letter).

Plaintiff filed suit against Defendant in the 57th Judicial Court of Bexar County on August 11, 2020. ECF No. 1-4. Defendant removed this case on September 14, 2020. ECF No. 1. On December 3, 2020, Defendant's motion to dismiss was denied, but its motion to abate the case was granted. Text Order (December 3, 2020).

On April 8, 2021, AFM filed a motion to compel appraisal. ECF No. 49 at 5. Thereafter, the Court ordered the parties to appraisal and on September 16, 2021, an appraisal award was rendered. ECF No. 53-10 at 2 (Appraisal Award). The total Replacement Cost Value ("RCV") amount of the appraisal award was $1,307,934.24, while the Actual Cash Value ("ACV") amount of the appraisal award was $1,169,541.39. ECF No. 53-11 at 3–4 (AFM Payment Letter). The award also included $75,674.24 for ordinance and law coverage (code upgrades) for a total RCV of $1,383,608.48 and ACV of $1,245,215.63. *Id.*

On September 17, 2021, AFM tendered two payment amounts, the first one for the replacement cost value of the appraisal award ($1,383,608.48), less code upgrades ($75,674.24), depreciation ($137,852.85), prior payments ($756,547.54), and the deductible ($100,000.00), totaling $313,533.85. *Id.* The second amount tendered was for the prompt payment penalties it calculated in the amount of $62,706.77. *Id.* In total, a check for $376,240.62 (the ACV appraisal

award of $313,533.85 plus prompt payment penalties of $62,706.77) was made payable to Plaintiff by Defendant. *Id*. at 7.

In a letter to Defendant's counsel on December 17, 2021, Plaintiff's counsel indicated that Defendant had miscalculated its payment from September 17, 2021, and subsequently returned the check. ECF No. 53-12 at 2 (December 17, 2021 Letter). By Plaintiff's calculation, it was owed $725,358.18, consisting of the unpaid policy benefits from the replacement cost, the ordinance and law provisions (code upgrades) of the appraisal award, statutory and prejudgment interest pursuant to Texas law, and attorneys' fees incurred by Plaintiff. *Id*. Plaintiff's claim breakdown was in the following amounts:

- $313,533.85 in actual cash value benefits;
- $95,211.23 in statutory interest pursuant to Chapter 543 of the Texas Insurance Code;
- $57,543.40 in prejudgment interest;
- $137,852.85 in withheld depreciation;
- $75,674.00 in ordinance and law benefits; and
- $45,542.85 in attorneys' fees.

*Id*. Plaintiff requested immediate payment of the full amount owed, indicating that it would otherwise file a formal motion to lift the abatement in the case and continue with litigation. *Id*. The case was reopened on March 4, 2022. ECF No. 42.

Plaintiff thereafter filed its amended complaint on July 1, 2022. ECF No. 49. Plaintiff alleges that, to date, Defendant has not properly paid Plaintiff for the damages owed under the Policy and/or the law for its delays and intentional low balling and delaying of Plaintiff's claim. *Id*. at 6. Plaintiff alleges that these unpaid amounts include unpaid policy benefits (for withheld depreciation and code upgrade coverages), statutory damages in the amounts of 10 percent per annum on the late payments and any lost policy benefits, reasonable attorneys' fees, court costs, and prejudgment interest. *Id*. Plaintiff brings claims for breach of contract, violations of the Texas Insurance Code, violations of the Deceptive Trade Practices Act ("DTPA"), violations of the Texas

4

Prompt Payment of Claims Act ("TPPCA"), and breach of the duty of good faith and fair dealing. *Id*. at 6–11.

## DISCUSSION

### I.     Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of South Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.   Analysis

Defendant AFM moves for summary judgment on all claims asserted against it for breach of contract, violations of the Texas Insurance Code, DTPA, TPPCA, and common-law breach of the duty of good faith and fair dealing, as well as for summary judgment on Plaintiff's claims for attorneys' fees and prejudgment interest.

### A.  Breach of Contract Claim

In Texas, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l LLC*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). The parties here do not dispute that the Policy at issue is a valid contract. Rather, Plaintiff's claim solely turns on whether Defendant AFM breached the contract.

"[A] breach of contract occurs when a party fails or refuses to do something he has promised to do." *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.*, 826 S.W.2d 638, 640 (Tex. App.—Houston [14th Dist.] 1992, no writ). "Generally, a court determines what conduct is required by the parties—i.e., what duties exist under a contract. But, insofar as a dispute exists concerning the failure of a party to perform a contract, the court submits the disputed fact questions to the fact finder." *Vast Const., LLC v. CTC Contractors, LLC*, 526 S.W.3d 709, 718 (Tex. App.— Houston [14th Dist.] 2017, no pet.) (internal quotations and citations omitted).

Defendant AFM contends, and the Court agrees, that because it paid the appraisal award, it cannot, as a matter of law, have breached the Policy. ECF No. 53 at 15. Defendant paid Plaintiff the actual cost value measure owed pursuant to the appraisal award. Defendant contends, and the Court agrees, that this payment is the entire amount owed by AFM pursuant to the terms of the Policy.

The Policy provides in relevant part:

**Valuation**

Adjustment of the physical loss amount(s) under this Policy will be as of the date of loss at the place of loss, and for no more than the interest of the Insured.

1.  Adjustment of physical loss to property will be determined based on the lesser of the following unless stated otherwise below or elsewhere in this Policy:

    a) The cost to repair.
    b) The cost to rebuild or replace on the same site with new materials of like size, kind and quality.
    c) The cost to rebuild, repair or replace on the same or another site, but not to exceed the size and operating capacity that existed on the date of loss.
    d) On real property or machinery and equipment, other than stock, offered for sale on the date of the loss, the selling price.

* * *

12. On property if not repaired, replaced or rebuilt on the same or
    another site within two years from the date of loss, unless such time
    is extended by the Company, the **actual cash value**.

    The Insured may elect not to repair or replace the insured real or
    personal property under Item 1 above that is lost, damaged or
    destroyed. Loss settlement may be elected on the lesser of repair or
    replacement cost basis if the proceeds of such loss settlement are
    expended on other capital expenditures related to the Insured's
    operations within two years from the date of loss. As a condition of
    collecting under this item, such expenditure must be unplanned as
    of the date of loss and be made at a described location under this
    Policy. This item does not extend to Demolition and Increased Cost
    of Construction.

ECF No. 53-1 at 56–57.

The Court concludes that Defendant AFM tendered all that is owed pursuant to the

appraisal award and in accordance with the Policy. Replacement cost benefits and code upgrade

costs were not payable because Plaintiff had not, to date, commenced repairs of the allegedly

damaged properties at issue. The Policy provides that the physical loss amount will the actual cash

value ("ACV") if the properties are not repaired, replaced, or rebuilt within two years from the

date of loss. *Id.* at 57.

The parties dispute who bears the burden of establishing whether any repairs have been

completed prior to the Policy's two-year deadline. *Compare* ECF No. 58 at 10 (Plaintiff argues

that "[r]eplacement cost provisions that require repair or replacement are a limitation on coverage

. . . [are] the insurance company's burden of proof at trial") *with* ECF No. 60 at 4 (Defendant

contends that "replacement cost provision here is instead an affirmative extension of coverage – a

substantive measure of damages provision, for which Texas courts have never held the insurance

carriers hold the burden"). The Court agrees with Defendant that the insured party bears the burden

of proving the extent of its loss and any evidence of repairs, which Plaintiff fails to do. Plaintiff

relies on *Ayoub v. Chubb Lloyds Ins. Co. of Texas* for the proposition that replacement cost provisions that require repair or replacement are a limitation on coverage, which is therefore the insurance company's burden of proof at trial. 641 F. App'x 303 (5th Cir. 2016).

Notably, the language in the Policy in this case does not begin with limitation language. Such language is similar to policy language that has been construed by Texas courts as limitations of liability. *Id.* at 308 (citing *Crisp v. Sec. Nat. Ins. Co.*, 369 S.W.2d 326, 328 (Tex. 1963) (stating that "liability hereunder shall not exceed . . ."); *Imperial Ins. Co. v. Nat'l Homes Acceptance Corp.*, 626 S.W.2d 327, 329 (Tex. App. 1981), *writ ref'd n.r.e.* (Apr. 21, 1982) (same); *Manhattan Fire & Marine Ins. Co. v. Melton*, 329 S.W.2d 338, 340 (Tex. Civ. App. 1959), *writ ref'd n.r.e.* (Mar. 2, 1960) (same)). Second, the replacement cost language in the Policy functions not as a limitation of liability or an exclusion to coverage, but rather a way to measure damages and determine what damages sub-provision applies. The language examined in *Ayoub was* dissimilar; there, the Court found that it "makes no sense to put the onus on the insured to prove that they did not begin repairs on the dwelling within 180 days in order to have access to a lesser recovery—a burden they would never seek." *Id.* at 309. In contrast, the language in this Policy reasonably requires the insured to prove the extent of its loss and any evidence of repairs.

The Court does recognize that Plaintiff submitted invoices for repairs to the skylights and leaks at the dealerships. *See* ECF No. 53-2 at 2 (December 18, 2019 Letter) (detailing invoices for leak repairs and removal and replacement of the skylights at the dealerships). Bonilla also testified that she had received such invoices. ECF No. 58-1, Bonilla Dep. at 157:22-159:18. The Court notes, however, that the RCV and ACV value calculated as part of the December 2019 payment from Defendant to Plaintiff were the *same figure* for the skylights at the Subaru, Lexus, and Volkswagen dealerships, and also at the car wash. ECF No. 58-7 at 32 (Statement of Loss).

| Description | Details | RCV | ACV |
|---|---|---|---|
| Subaru | Skylights | $23,375.00 | $23,375.00 |
| Lexus | Skylights – Roof Window | $31,167.00 | $31,167.00 |
| Lexus | Skylights – Ridge Large | $38,034.00 | $38,034.00 |
| Volkswagen | Skylights – Roof Window | $1,656.73 | $1,656.73 |
| Volkswagen | Skylights – Ridge Large | $5,412.50 | $5,412.50 |
| Car Wash | Skylights | $13,575.00 | $13,575.00 |

*Id.*

Plaintiff has therefore already recovered for the skylight repair costs it submitted to Defendant. Those skylight repair invoices factored into the check paid out on December 23, 2019 in the amount of $756,547.54. Those repair costs cannot now be used as the basis for the remaining portion of recovery of RCV versus ACV. This would award Plaintiff a windfall recovery, permitting Plaintiff to recover the skylight repair costs and also to use those repair costs, without evidence of any other unpaid repairs, to support its claim for RCV. The Court further notes that, even in a similar case where Plaintiff testified that 90% of repairs had been completed, actual cash value was the proper measure of damages in the suit. *See Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 WL 4796967, at *4 (N.D. Tex. Sept. 26, 2014). The Court, finding no other support in the record for any other repairs, holds that the ACV value paid out pursuant to the appraisal award is the proper measure of damages in this case.

Finally, Plaintiff argues that the doctrine of prevention applies in this case, and that it would be "unreasonable and illogical to require Kahlig to complete repairs that AFM had not approved until after the deadline to complete them." ECF No. 58 at 12. Under the doctrine of prevention, "when a promisor wrongfully prevents a condition from occurring, that condition is excused." *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000). This doctrine does not save Plaintiff's claim, as "no Texas court has employed the doctrine of prevention to vitiate an insured's contractual obligation to repair or replace damaged property before claiming payment for

replacement costs." *Lakeside FBBC, LP v. Everest Indem. Ins. Co.*, No. SA-17-CV-491-XR, 2020 WL 1814405, at *8 (W.D. Tex. Apr. 8, 2020) (quoting *Devonshire Real Est. & Asset Mgmt., LP*, 2014 WL 4796967, at *7). The Court notes that, even in other jurisdictions where the doctrine of prevention *has* been applied in a similar scenario, "the insurer either completely denied the claim or refused to make any payments until it was too late for the insured, who was frequently an unsophisticated party, to make repairs." *Id.* (collecting cases). In contrast, "courts have refused to extend the doctrine where the insurer already paid the insured actual cash value or where the dispute took place in a commercial setting and involved relatively sophisticated parties." *Id.* (citing *Md. Cas. Co. v. Knight*, 96 F.3d 1284, 1292 (9th Cir. 1996)).

In this case, the dispute took place in a commercial context between relatively sophisticated parties, and AFM did make a pre-appraisal payment – as well as actual cash value payments that Plaintiff could have used to make repairs in the ensuing years. Accordingly, to the extent that Plaintiff invokes the doctrine of prevention to save its breach of contract claim, that argument fails.

For the foregoing reasons, Plaintiff's breach of contract claim fails as a matter of law and summary judgment is appropriate.

### B.  Common Law Breach of the Duty of Good Faith and Fair Dealing Claims

Because the Court concludes that AFM has fully paid the amounts owed to Plaintiff as specified in the appraisal award—and thus has fully complied with its contractual obligations—Plaintiff's claims for common law and statutory bad faith are also dismissed. *See Lakeside FBBC, LP*, 2020 WL 1814405, at *8; *see also Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 129 (Tex. 2019) (holding insurer's payment of appraisal award barred common law and statutory bad faith claims to the extent the only actual damages sought are lost policy benefits); *Lopez v. Allstate Texas Lloyds*, No. 7:18-CV-260, 2020 WL 292342, at *9 (S.D. Tex. Jan. 21, 2020) (granting

summary judgment on extracontractual claims where insurer paid appraisal award because that payment provides "all policy benefits to which [the plaintiff] is entitled"); *Dunne v. Allstate Vehicle and Prop. Ins. Co.*, No. H-18-4519, 2020 WL 130101, at *2 (S.D. Tex. Jan. 10, 2020) (same); *Alcala v. Republic Lloyds*, No. 13-18-26-CV, 2020 WL 830840, at *3 (Tex.App.—Corpus Christi Feb. 20, 2020, no pet.) (citing *Ortiz* to grant summary judgment on statutory bad faith claims under both Chapter 541 and the DTPA).

To the extent Plaintiff argues that its request for attorneys' fees, court costs, or exemplary damages save the extracontractual claims, those are not considered actual damages, but are recoverable only upon an award of underlying actual damages, and thus do not save the contractual and bad faith claims. *See Ortiz*, 589 S.W.3d at 134–35.

### C.  Texas Insurance Code and DTPA Claims

In addition to its breach of contract claim, Plaintiff asserts extracontractual claims against Defendant for alleged violations of the Texas Insurance Code and the DTPA.

To prevail on these extracontractual claims, Plaintiff must satisfy either the entitlement-to-benefits rule or the independent-injury rule. The entitlement-to-benefits rule provides that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 495 (Tex. 2018).

On the other hand, extracontractual claims for damages outside of policy benefits must satisfy the independent-injury rule. *Id.* at 499–500. "[I]f an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* at 499. These damages must be "truly independent of the insured's right to receive policy benefits."

*Id.* at 500. "When an insured seeks to recover damages that 'are predicated on,' 'flow from,' or 'stem from' policy benefits," the insured must show that she is entitled to benefits under the policy, or she is barred from recovery. *Id.* (quoting *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 920–22 (Tex. 2005)).

In this case, the entitlement-to-benefits rule does not apply because the alleged conduct did not cause Plaintiff the loss of any benefit under the Policy. Indeed, Plaintiff received the benefits to which it was entitled under the Policy when the Defendant paid the appraisal award.

The independent-injury rule is equally unapplicable in saving Plaintiff's extracontractual claims because Plaintiff has presented no evidence of an independent injury. The injury at issue cannot be the loss of policy benefits. The rule "does not apply if the insured's statutory or extra-contractual claims 'are predicated on [the loss] being covered under the insurance policy' or if the damages 'flow' or 'stem' from the denial of the claim for policy benefits." *USAA Tex. Lloyds Co*, 545 S.W.3d at 500. To the extent that Plaintiff relies on the doctrine of prevention to demonstrate independent injury, for the reasons discussed *supra*, the Court disagrees. Defendant AFM is thus entitled to summary judgment on these claims.

### D.  Prompt Payment Claim

In Defendant's September 21, 2021 letter, it advised Plaintiff that it would be tendering payment in the amount of $376,240.62, including $62,706.77 in prompt-payment penalties. ECF No. 53-11 at 3–4. Plaintiff rejected the tender and argued that the correct amount of prompt-payment penalties that it was entitled to was for $95,211.23. ECF No. 53-12 at 2.

The TPPCA imposes liability on an insurer for failing to comply with statutory payment deadlines for a documented claim that it owes under an insurance policy. "To prevail under a claim for TPPCA damages under section 542.060, the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections

of the TPPCA in processing or paying the claim." *Barbara Tech. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019). In relevant part, the TPPCA provides: "if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060." TEX. INS. CODE § 542.058(a). Section 542.060 specifies that, for a claim to which Chapter 542A applies, "the insurer is liable to pay the holder of the policy . . . simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees." *Id.* § 542.060(c). In both December of 2019 and September of 2021, when Defendant paid Plaintiff for TPPCA interest, the applicable rate was 10%. *See* Texas Credit Letter, Vol. 39, No. 26 (December 23, 2019), https://occc.texas.gov/sites/default/files/uploads/credit-letters/credit_letters_2019.pdf; Texas Credit Letter, Vol. 41, No. 12 (September 21, 2021), https://occc.texas.gov/sites/default/files/uploads/credit-letters/credit_letters_2021.pdf.

The parties do not contest Defendant AFM's liability under the Policy. Rather, they contest Defendant's compliance with the TPPCA in processing and paying Plaintiff Kahlig's claim. Plaintiff asserts that Defendant's payment of the appraisal award in this case does not absolve it of liability under the TPPCA. ECF No. 58 at 21. The Court concludes that Defendant AFM is entitled to summary judgment because it has paid Plaintiff interest pursuant to the TPPCA.

An insurer that violates the TPPCA may still be entitled to summary judgment if it paid the insured the full amount of interest that the insured could claim under the TPPCA. *See Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 989 (5th Cir. 2016) (holding that the district court properly

granted summary judgment on a TPPCA claim when the insurer demonstrated that it "compensated [the insured] for the penalty interest that accrued because of the insurer's delay"); *White v. Allstate Vehicle & Prop. Ins. Co.*, No. 6:19-cv-00066, 2021 WL 4311114, at *8 (S.D. Tex. Sept. 21, 2021) (granting summary judgment when the insured was paid penalty interest to which she would be entitled if the insurer was found liable under the TPPCA); *Trujillo v. Allstate Vehicle & Prop. Ins. Co.*, No. H-19-3992, 2020 WL 6123131, at *5 (S.D. Tex. Aug. 20, 2020) (same). AFM has presented evidence that it has paid Plaintiff the maximum amount interest to which it would be entitled if it were found liable for violating the TPPCA. Plaintiff argues that its prompt payment claim is calculated based on AFM's acceptance of coverage on June 7, 2019. ECF No. 58 at 18. The Court agrees with Defendant that it did not accept coverage on June 7, 2019. ECF No. 53-13 at 2. Defendant argues that, using Plaintiff's submission of a Proof of Loss on October 3, 2019 as the date from which to begin the clock for Defendant's prompt-payment obligation, its payment of $62,706.77 in September 2021 satisfies its obligations. The Court agrees. Summary judgment is therefore appropriate as to Plaintiff's TPPCA claim.

### E.  Attorneys' Fees

Plaintiff next brings a claim for attorneys' fees resulting from this dispute, but Defendant contends, and the Court agrees, that such fees are barred in this case under Tex. Ins. Code § 542A.007.

As provided by Tex. Ins. Code § 542A.007(a)–(b), "a claimant may recover the full amount of its reasonable and necessary fees if it recovers policy benefits of 80% or more of the amount

alleged to be owed on the claim in a pre-suit notice given under the chapter. If the party is awarded at least 20% but less than 80% of the amount alleged to be owed on the claim, the party may recover its reasonable and necessary fees at a rate proportionally discounted." *Smith W. Texas Properties, Ltd. v. Allied Prop. & Cas. Ins. Co.*, 555 F. Supp. 3d 342, 346 (W.D. Tex. 2021). However, if the amount calculated is less than 20% of the amount alleged to be owed, then the Court may not award attorneys' fees. Tex. Ins. Code § 542A.007(c).

In this case, Defendant has paid Plaintiff the full amount of policy benefits and interest owed under the TPPCA. Thus, the amount to be awarded in a judgment on Plaintiff's TPPCA claim is zero dollars, resulting in an award of no attorneys' fees. *See White*, 2021 WL 4311114, at *9–10 (concluding that when the insured is not entitled to damages or interest under the TPPCA, the insured may not recover attorneys' fees); *Trujillo*, 2020 WL 6123131, at *6 (same).

In sum, it is undisputed that Defendant AFM paid to Plaintiff the full policy benefits as well as the maximum interest it could receive under the TPPCA. Consequently, Plaintiff cannot recover damages, interest, or attorneys' fees for any of her claims, and summary judgment is appropriate.

While there is some dispute across district courts and judges, the Court notes that under either calculation, Plaintiff is precluded from recovering attorneys' fees. In an alternate calculation, the numerator is the amount awarded on the claim could be considered $313,533.85 (in contrast to the zero dollars used to make the calculation above). Using $313,533.85 as the figure in the numerator and using as the denominator the amount identified by Plaintiff in its pre-suit letter ($1,631,444.78), the result of the calculation is still less than 20% (19.22% under this model of calculation). Because that figure is lower than the 20% specified by Tex. Ins. Code § 542A.007(c), Plaintiff is still not entitled to recover an award of attorneys' fees under the model employed in

other courts in this district. *See, e.g., Smith W. Texas Properties, Ltd.*, 555 F. Supp. 3d at 347 (declining to award attorneys' fees to a Plaintiff after calculating a non-zero numerator as "the amount to be awarded 'for the claimant's claim under the insurance policy for damage to or loss of covered property'—i.e., $420,557.11, the amount owed on the claim based on the jury's findings"); *see also Gonzalez v. Allstate Fire & Cas. Ins. Co.*, No. SA-18-CV-00283-OLG, 2019 WL 13082120, at *6 (W.D. Tex. Dec. 2, 2019) (rejecting Defendant's contention that, because "it has already made both the appraisal payments and any relevant interest payments," the appropriate numerator to use is $0 and the resulting fees calculation is therefore also $0).

### F. Prejudgment Interest

Finally, Plaintiff contends that, since Defendant received written notice of the claim on April 15, 2019, Defendant owes prejudgment interest on the unpaid portions of the appraisal award at a rate of $72.20 a day until paid. ECF No. 53-12 at 3.

Prejudgment interest is not recoverable when the district court holds that there is no breach of contract. *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 471 (5th Cir. 2013); see also *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App. 2004) ("As there was no breach of contract by [Defendant], and consequently no judgment against it on which to base interest calculations, prejudgment interest cannot be awarded against [Defendant]."). According, Plaintiff is not entitled to recover prejudgment interest from Defendant AFM.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 53) is **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. A final judgment pursuant to Rule 58 will follow.

It is so **ORDERED**.

**SIGNED** this 30th day of January, 2023.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE